IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KELLY L. SMITH & KARLA G. SMITH,<br><br>Plaintiffs,<br><br>vs.<br><br>CENTRAL PLATTE NATURAL RESOURCES DISTRICT, et al.,<br><br>Defendants. | 4:14-CV-3230<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the plaintiffs' motion for default judgment (filing 51) and the defendants' motion to dismiss the amended complaint (filing 45). For the reasons discussed below, the Court will deny the motion for default judgment, will stay this matter pursuant to *Younger* abstention, and will deny the defendants' motion to dismiss without prejudice to reasserting the arguments contained therein.

BACKGROUND

The plaintiffs Kelly L. Smith ("Kelly") and Karla G. Smith ("Karla") are married, and reside in Nebraska. Filing 36 at 3. They own land in Custer County, Nebraska. Filing 36 at 3. The defendant Central Platte Natural Resources District (CPNRD) is a Nebraska political subdivision. Filing 36 at 3. The other defendants in this matter are either board members or employees of CPNRD. *See* filing 36 at 4–6. The plaintiffs have brought this suit against the defendants under 42 U.S.C. § 1983, alleging violations of their constitutional rights, as well as violations of their statutory rights under the Privacy Act, 5 U.S.C. § 552a, and the Food Conservation and Energy Act, 7 U.S.C. § 8791. Filing 36 at 2.

The plaintiffs' allegations are as follows. On January 6, 2006, CPNRD imposed a permanent stay on new irrigated land in the district in which the plaintiffs' land is located. Filing 36 at 6. In essence, only land with a history of irrigation can be certified as irrigated land, and land not certified as irrigated cannot be developed for irrigation. Filing 36 at 8. The plaintiffs take issue with several aspects of CPNRD's imposition and enforcement of the stay. As an initial matter, they allege that CPNRD failed to comply with various statutory requirements related to imposing irrigation stays. Filing 36 at 6–7.

1

The plaintiffs also allege that CPNRD committed various improprieties in enforcing the stay against the plaintiffs' land. First, they contend that CPNRD incorrectly refused to certify certain portions of their land as irrigated. *See* filing 36 at 8. In 2006, the plaintiffs received a letter asking them provide CPNRD with certain Farm Service Agency (FSA) records, so that CPNRD could determine which portions of the plaintiffs' land should be certified as irrigated. Filing 36 at 7. According to the plaintiffs, Kelly met with non-party Kevin Gill, an employee of the United States Department of Agriculture and a representative of CPNRD, to discuss the certification. Filing 36 at 7. Gill informed Kelly that only those portions of land that the FSA documents indicated had a history of irrigation could be certified as irrigated. Filing 36 at 7–8. All other portions of land would be subject to the stay on new irrigation. *See* filing 36 at 7–8. Though Kelly protested both the requirement that he provide his FSA records, as well as the application of the stay to certain portions of his land, he signed a document agreeing to the certification. Filing 36 at 8. According to the plaintiffs, Gill told Kelly that if he failed to do so, he would be fined up to $5,000 per day. Filing 36 at 8. Karla, who was apparently not present, did not sign the document. Filing 36 at 8.

In 2012, the plaintiffs developed a portion of their land that they contend has always been irrigated, but which was apparently not certified as such. *See* filing 36 at 9. Kelly reported the development to CPNRD, and was informed that he would be required to complete a variance request. Filing 36 at 9. In May 2012, Kelly met with defendant Jesse Mintken, a CPNRD employee, to complete that request. Filing 36 at 9. Mintken informed Kelly that, due to the stay, the plaintiffs would be required to "trade" 1.5 acres of their certified irrigated land for each acre of the newly developed land. Filing 36 at 9. The plaintiffs would then be permitted to irrigate the newly developed land, but not the "traded" certified land. *See* filing 36 at 9. Additionally, because of the soil classification of the newly developed land, Mintken informed Kelly that he would have to seed it with particular grasses. Filing 36 at 9.

Kelly disagreed with these conclusions. Filing 36 at 9. As a result, he alleges, Mintken became physically and verbally threatening toward him. Filing 36 at 9. Mintken did not complete the variance on that date, but later sent the plaintiffs a document relating to the transfer. Filing 36 at 9. The plaintiffs signed the document and returned it to Mintken. Filing 36 at 10. However, the plaintiffs allege that the document did not contain certain information relevant to the transfer, including information about the soil classification and the trade of certified irrigated land for newly developed land. Filing 36 at 10.

The plaintiffs allege that this transfer was designed with the purpose of hindering their ability to use their certified irrigated land. Filing 36 at 12. According to the plaintiffs, when CPNRD determined which portions of the

plaintiffs' certified irrigated land would be "traded" for the newly developed land, CPNRD selected acres that were unusually inconvenient for the plaintiffs. *See* filing 36 at 12. The plaintiffs became aware of this circumstance when Kelly Smith called CPNRD to protest the alleged unfair treatment of his neighbor. *See* filing 36 at 11–12. During the call, defendant Luke Zakrzewski, a CPNRD employee, informed Kelly that the plaintiffs had violated the transfer by irrigating portions of the land they were not permitted to irrigate. Filing 36 at 12. Zakrzewski sent the plaintiffs a copy of the transfer, which contained full information about which land was permitted to be irrigated, and a letter instructing the plaintiffs how to comply with the transfer. Filing 36 at 12.

On July 5, 2013, Kelly filed a request with CPNRD to appeal its certification determination. Filing 36 at 13. After a hearing, the appeal was denied. Filing 36 at 13. In September 2013, Kelly visited the CPNRD office to copy his file, and discovered that CPNRD was in possession of FSA reports relating to the plaintiffs' land. Filing 36 at 14. Zakrzewski allegedly informed Kelly that the USDA had sent the information. Filing 36 at 14. This was, the plaintiffs allege, a violation of a district court ruling that the USDA was not permitted to disclose the FSA records to CPNRD. Filing 36 at 8–9.

Later that year, on October 25, 2013, Kelly received notice in the mail of a formal hearing before the CPNRD board to determine whether Kelly had violated CPNRD's rules and regulations. Filing 36 at 14. Karla did not receive notice. Filing 36 at 14. The hearing took place on November 21, 2013. Filing 36 at 15. Zakrzewski testified that satellite images taken in the fall of 2012 demonstrated that the plaintiffs watered land that was subject to the stay. Filing 36 at 15. The CPNRD board voted to issue Kelly a cease-and-desist order, but, according to plaintiffs, did not include Karla. Filing 36 at 15–16. In addition, the defendants served Kelly, but not Karla, with the order. Filing 36 at 16.

Kelly was ordered to provide offsets for newly irrigated land by ceasing irrigation on other portions of land. Filing 36 at 16. He was to change the classification for that land from irrigated to non-irrigated with the FSA. Filing 36 at 16. And he was ordered to provide documentation of the classification change to CPNRD as proof of compliance. Filing 36 at 16. In addition, in March 2014, the plaintiffs discovered that the defendants sent documents to the Custer County Assessor's office with instructions to reclassify certain portions of the plaintiffs' land from irrigated to non-irrigated usage. Filing 36 at 17.

Then, on December 5, 2014, CPNRD filed a civil complaint in Custer County district court against both plaintiffs for alleged violations of the cease-and-desist order. Filing 36 at 18. That lawsuit is apparently pending now. The plaintiffs further allege that the defendants' actions were motivated by dislike of

Kelly, and that CPNRD has not enforced its stay or other rules against other individuals in CPNRD's jurisdiction. Filing 36 at 19–20.

The plaintiffs allege various injuries as a result of the defendants' alleged actions, including: violations of their constitutional and statutory right to privacy, right to use water, right to engage in their chosen profession, right of procedural due process, various statutory rights, and the right to have their land certified as irrigated. Filing 36 at 21. The plaintiffs seek relief in the form of: an injunction staying the cease-and-desist order, fair market value for the right to irrigate 270 acres of land, a cease-and-desist order prohibiting the defendants from "further harassment and interference," damages for the plaintiffs' humiliation and emotional harm, costs of maintaining the present action, punitive damages, an injunction staying the pending civil case in Custer County, and a judgment declaring CPNRD's rules and regulations, as well as the stay on new irrigated land, invalid. Filing 36 at 21–22.

## STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.* And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678.

## DISCUSSION

(a) <u>Motion for default judgment</u>

The plaintiffs have moved for default judgment. Filing 51. After the plaintiffs filed their original complaint, the defendants moved to dismiss (filing 32). Before that motion was resolved, the plaintiffs filed an amended complaint (filing 36). In response, the defendants filed a motion to strike the amended complaint under Fed. R. Civ. P. 12(f) (filing 41). That motion was denied on May 12, 2015 (filing 44). Two days later, the defendants filed a motion to dismiss the amended complaint (filing 45). The defendants specified that they filed that motion "to avoid confusion" given that the motion to dismiss the original

4

complaint was still pending. Filing 45. This Court denied as moot the motion to dismiss the original complaint. Filing 50.

The plaintiffs contend that they are entitled to default judgment because the defendants did not comply with Fed. R. Civ. P. 12(a)(4)(A), which requires defendants to file a responsive pleading within 14 days of the denial of a Rule 12 motion. Filing 52 at 4. It is true that the defendants did not file an answer after their motion to strike was denied. However, the defendants did file a new motion to dismiss the amended complaint within 14 days of the denial of the motion to strike. *See* filing 45.

The Federal Rules of Civil Procedure do not explain precisely how to dispose of a pending Rule 12 motion when an amended complaint is filed. Under these circumstances, it was not unreasonable for the defendants to conclude that they should reassert their motion to dismiss in response to the amended complaint. It is appropriate for the Court to consider the second motion as relating back to the first, since the obvious intent of filing the second motion was simply to clarify the matters submitted to the Court. Thus, the defendants have not failed to meet their obligation under Fed. R. Civ. P. 12(a)(4)(A). Accordingly, default judgment is inappropriate here.

The difficulty presented is that the defendants filed the second motion to dismiss after they filed a Rule 12(f) motion to strike. To the extent that the second motion to dismiss raises new arguments not raised in the first motion, those are issues that should have been presented either at the same time as the motion to strike, or the same time as the first motion to dismiss, pursuant to Fed. R. Civ. P. 12(h)(1)(A). Accordingly, the Court will consider the second motion to dismiss only to the extent it is a reassertion of the arguments made in the first motion.

(b) *Younger* abstention

Before reaching the merits of the defendants' motion to dismiss, the Court first considers whether it is obligated under *Younger v. Harris*, 401 U.S. 37 (1971), to refrain from exercising its jurisdiction over this matter.[1]

Under *Younger*, federal courts should decline jurisdiction in cases where equitable relief would interfere with pending state proceedings. *Id.* at 91. The

---

[1] The defendants raised *Younger* abstention in their motion to dismiss the amended complaint, but not in their motion to dismiss the original complaint. Filing 46 at 26. However, because the amended complaint plainly implicates *Younger*, and because the Court may raise abstention sua sponte, it will consider the issue nonetheless. *See Robinson v. City of Omaha*, 866 F.2d 1042, 1043 (8th Cir. 1989) (holding that abstention doctrines in general may be raised sua sponte); *see also Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 676 (8th Cir. 2013) (affirming dismissal where the district court abstained sua sponte under the *Younger* doctrine).

5

*Younger* doctrine was originally applied to state criminal prosecutions, but it was later extended to certain civil proceedings as well. *Aaron v. Target Corp.*, 357 F.3d 768, 774 (8th Cir. 2004). The Supreme Court has identified three factors that should lead to *Younger* abstention: (1) the existence of an ongoing state judicial proceeding which would be disrupted by federal action, (2) which implicates important state interests, and (3) which provides an adequate opportunity to raise constitutional challenges. *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

The first *Middlesex* factor is whether there is an ongoing state judicial proceeding that would be disrupted by federal action. *Id.* The state proceeding is clearly "ongoing." *See Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1250 (8th Cir. 2012) (directing that a federal court must abstain "until the state defendant (and federal plaintiff) exhausts his appellate remedies"). Further, in determining whether a state proceeding would be disrupted by federal action, *Younger* has no "fixed requirement . . . that a state judicial proceeding must have been initiated before the federal case was filed." *Aaron*, 357 F.3d at 775. Instead, courts are to look to "what was actually taking place in both settings to decide whether to abstain." *Id.* The key factor is "[w]hether proceedings of substance have taken place in either court." *Id.* If, when the state court action is filed, federal proceedings are still "in an embryonic stage," with "no contested matter ha[ving] been decided," abstention is warranted. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929 (1975).

Here, the action in Custer County state district court was filed on December 5, 2014 against Kelly and Karla Smith. Filing 45-1 at 27. Kelly filed the present action in federal court on November 21, 2014. Filing 1. Karla joined as a plaintiff on February 26, 2015. Filing 36. Between November 21, 2014 and December 5, 2014, no contested matter was decided in the present action. It was not until February 5, 2015 that the defendant even filed a motion to dismiss. *See* filing 32. Thus, the first factor of the *Middlesex* inquiry is clearly satisfied.

The second factor is whether the action implicates important state interests. *Middlesex*, 457 U.S. at 432. Generally, important state interests are implicated when the matter "is intimately involved with sovereign prerogative." *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959). Examples include eminent domain proceedings, *id.*, proceedings to enforce nuisance statutes, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607 (1975), and contempt proceedings, *Juidice v. Vail*, 430 U.S. 327, 335 (1977). Here, this matter primarily raises CPNRD's ability both to regulate land and water use, and to enforce its regulations. Those interests are intimately related to the state's sovereign powers, and involve important state-law questions about the apportionment of authority between the state and its political divisions. Thus, the Court finds that this matter implicates an important state interest.

The third *Middlesex* factor is whether the ongoing state proceeding provides an adequate opportunity to raise constitutional challenges. In Nebraska defendants are permitted to raise constitutional defenses in actions to enforce cease-and-desist orders. For example, in *Bamford v. Upper Republican Natural Resources District*, appellants raised at least two constitution challenges: that the statutory provisions authorizing a natural resources district to issue a cease-and-desist order were unconstitutional, and that the cease-and-desist order represented a regulatory taking. 512 N.W.2d 642, 648 (Neb. 1994). Thus, the Court finds that the third *Middlesex* factor is satisfied, and *Younger* abstention is warranted.

But having decided that *Younger* abstention applies, the Court must now determine whether a stay or dismissal is appropriate. In cases where only injunctive relief is sought, *Younger* "contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts." *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) (a § 1983 case involving only injunctive relief, and not damages). But where the federal action also seeks damages, a stay is generally appropriate. *Night Clubs, Inc. v. City of Fort Smith*, 163 F.3d 475, 481 (8th Cir. 1998). The Eighth Circuit has identified a narrow exception to this general rule, which allows a district court to dismiss a § 1983 claim for damages where awarding damages would first require either declaring that a state statute was unconstitutional, or overturning a state court judgment on a matter of state policy. *Id.* (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 719 (1996)). But if "a possibility of return to federal court remains, a stay rather than a dismissal is the preferred mode of abstention." *Int'l Ass'n of Entrepreneurs v. Angoff*, 58 F.3d 1266, 1271 (8th Cir. 1995). Here, at least some of the plaintiffs' claims do not require declaring a state statute unconstitutional or overturning a state court judgment on a matter of state policy. Thus, the appropriate procedure is to stay this case pending final resolution of the state litigation.

Because the final resolution of the state proceeding is likely to materially alter the issues in this case, the defendants' motion to dismiss (filing 45) will also be denied, without prejudice to reasserting the arguments contained therein at an appropriate juncture, if and when the stay of this case is lifted.

IT IS ORDERED:

1. The plaintiffs' motion for default judgment (filing 51) is denied.

2. The Court will stay this matter pending final resolution of the state proceeding.

7

3.  The parties are directed to update the Court every 90 days as to the status of the state proceedings.

4.  The Clerk of the Court is directed to enter an initial status report deadline of May 1, 2016.

5.  The defendants' motion to dismiss (filing 45) is denied without prejudice.

Dated this 1st day of February, 2016.

BY THE COURT:

John M. Gerrard
United States District Judge